IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL STANLEY VAN HOOSEN,<br><br>  Petitioner,<br><br>  vs.<br><br>M. KRAMER, Warden, Folsom State Prison,<br><br>  Respondent. | No. 2:09-cv-00689-JKS<br><br>MEMORANDUM DECISION |

Petitioner Daniel Stanley Van Hoosen, a state prisoner appearing *pro se*, filed a Petition

for Habeas Corpus Relief Under 28 U.S.C. § 2254.  Van Hoosen is currently in the custody of the

California Department of Corrections and Rehabilitation, incarcerated at the Folsom State Prison.

Respondent has answered, and Van Hoosen has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

In April 1998, after entering a plea of guilty in the San Bernardino County Superior

Court, Van Hoosen was convicted of one count of Torture (Cal. Penal Code § 206).  The trial

court sentenced Van Hoosen to a prison term of life with possibility of parole.[1]  Van Hoosen does

not challenge his conviction or sentence in this proceeding.

In November 2007 Van Hoosen made his second parole-suitability appearance before the

California Board of Parole Hearings ("Board").  The Board found Van Hoosen posed an

unreasonable risk of danger to society and denied him parole for a period of two years.  Van

_____

[1] Van Hoosen became eligible for parole after serving seven years.

Hoosen timely filed a petition for habeas relief in the San Bernardino County Superior Court.

The San Bernardino County Superior Court denied the petition in an unpublished, reasoned

decision.  Van Hoosen's subsequent petition for habeas relief was summarily denied by the

California Court of Appeal, Fourth District, without opinion or citation to authority.  The

California Supreme Court summarily denied review without opinion or citation to authority on

February 11, 2009.  Van Hoosen timely filed an incomplete Petition for relief in this Court on

March 13, 2009, and an Amended Petition on April 5, 2009.

The facts of the underlying conviction, as stated by the Board are:

> On December 23, 1997, at approximately 10:30 P.M., Daniel Vanhoosen was visiting Nancy Evans at her home at 35452 Yucaipa Y-U-C-A-I-P-A Boulevard in Yucaipa, California.  He became irate when Miss Evans advised him she no longer wished to be involved in a relationship with him and asked him to leave.  He became verbally abusive and struck her multiple times with his closed fist on her face and chest.
> Miss Evans ran to the phone in the kitchen, and dialed 911.  Mr. Vanhoosen obtained a butcher knife and waved it threateningly, advising her to tell the operator there was no problem.  She complied and terminated the phone call.  Mr. Vanhoosen continued to batter the victim with his fists about the head and chest area.
> Mr. Vanhoosen remained at Miss Evan's home throughout the night, disallowing her to leave her home.  He proceeded to assault and torture the victim over the next 12 hours.  Miss Evans would fall asleep periodically, only to be awakened by Mr. Vanhoosen straddling her, and pummeling her with his fists on her head and chest.  At one point, Miss Evans managed to flee to the front yard, however, Mr. Vanhoosen overtook her, dragging her over the gravel driveway and back into the house.
> On another occasion during the night, Mr. Vanhoosen took a knife and slightly cut Miss Evans about the chest, shoulders, arms and inner thigh, telling her "this was just a taste of" what he could do.  The beatings continued throughout the night until the morning hours of December 24, 1997.
> At approximately 10:00 A.M. on December 24, 1997, Mr. Vanhoosen left the residence, advising Miss Evans not to contact the police.  He specifically informed her if she told the police and he went to prison for this incident, he would locate and kill her when he was released.
> Out of fear for her safety, Miss Evans did not contact the police until approximately 4:00 P.M. on December 24, 1997, at the urging of a female

neighbor.  Due to her extreme fear of Mr. Vanhoosen, Miss Evans would not give a statement to the police in her home and had to be transported to the San Bernardino Police Department to do so.

The victim was observed by responding police officers, to have extensive injuries.  Her right eye was black, bleeding and swollen shut.  She had bruising on both sides of her face, extending from her hairline to underneath her chin.  She had scratches on her cheekbone and near her mouth, and had a bruised right ear. Miss Evans also sustained bruises and scratches on her shoulders, chest and breast area. She had a deep bruise on her left bicep that was approximately four inches long and two inches wide.  Skin had been scraped off her lower back, buttocks and her left thigh.  She had a full set of teeth marks on her right wrist area.

Medical aid was summoned and at the advice of medical staff, the victim was transported to the Redlands Community Hospital by a friend.  It was determined by medical staff that Miss Evans suffered a broken nose, a fractured eye socket and multiple abrasions on her lower back.

Approximately two hours later, Daniel Vanhoosen was stopped after his vehicle was pulled over by San Bernardino police officers during a traffic stop. It's noteworthy the victim remains fearful of Mr. Vanhoosen.  She attributes the commitment offense to his alcohol use.  She states her physical and mental health have improved over the years through therapy.  However, she has only recently ceased having nightmares of the incident.

According to the victim and supplemental police report dated February 17, 1998, on the same day Miss Evans returned to her residence following a court hearing for Mr. Vanhoosen, to discover a butcher knife, similar to the one used during the commitment offense, on her front porch.  This was viewed as a threatening gesture on the part of the inmate.  The origin of the knife remains unknown.

Finally, Deputy District Attorney Jay Robinson reiterated that the San Bernardino District Attorney's office strongly opposes Mr. Vanhoosen's release. He specifically cites Mr. Vanhoosen's threats to the victim on the day of the offense wherein Vanhoosen informed Miss Evans if she called the police and he went to prison, he would kill her upon his release to the community.[2]

After briefing was completed, the United States Court of Appeals for the Ninth Circuit,

sitting en banc, decided *Hayward v. Marshall*.[3]  At Docket No. 21 this Court entered its Order

directing the parties to file supplemental briefs addressing the *Hayward* decision, in particular

---

[2] Docket No. 16-1, pp. 107-12.

[3] 603 F.3d 546 (9th Cir. 2010) (en banc).

that "[t]he prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness."[4] The Court also directed the parties to consider two Ninth Circuit Decisions applying *Hayward*.[5] Both parties have submitted supplemental briefing.

## II.  GROUNDS RAISED/DEFENSES

In his Amended Petition, Van Hoosen asserts that his right to due process was violated in two respects:  (1) the Board's reliance on dismissed charges in violation of his plea agreement; and (2) the Board's determination that he presents a threat to public safety was not based upon "some evidence."  The State raises no affirmative defense.[6]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7] The Supreme Court has explained that "clearly established Federal law" in §

---

[4] *Hayward*, 603 F.3d at 562.

[5] *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), and *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010).

[6] *See* Rules—Section 2254 Cases, Rule 5(b).

[7] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[8]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[9]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[10]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[11]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[12]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[13]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial

---

[8] *Williams*, 529 U.S. at 412.

[9] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[10] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[11] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[12] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[13] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

impact of constitutional error in a state-court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[14]  Because state court judgments of

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden

of showing by a preponderance of the evidence that he or she merits habeas relief.[15]

In applying this standard, this Court reviews the last reasoned decision by the state

court.[16]  State appellate court decisions that affirm a lower court's opinion without explanation

are presumed to have adopted the reasoning of the lower court.[17]  Under AEDPA, the state

court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

by clear and convincing evidence.[18]  This presumption applies to state trial courts and appellate

courts alike.[19]

## IV.  DISCUSSION

**A.     Violation of Plea Agreement**

Van Hoosen was initially charged with two counts of Assault with a Deadly Weapon, one

count of Assault with the Intent to Commit Rape, one count of making Terrorist Threats, and one

---

[14] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[15] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[16] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[17] *Ylst*, 501 U.S. at 802-03.

[18] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[19] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

count of False Imprisonment by Violence.[20]  In an Amended Felony Complaint, Van Hoosen was

charged with one count of Torture, two counts of Assault with a Deadly Weapon, one count of

Assault with the Intent to Commit Rape, one count of making Terrorist Threats, and one count of

False Imprisonment by Violence.[21]  As part of his plea agreement, in exchange for his plea of

guilty to the Torture charge, the State dismissed all other charges.[22]

In rendering its decision, the Board made one reference that logically referred to one of

the dismissed charges.  "You attempted to have sexual intercourse with [the victim], but weren't

able to do it."[23]  Van Hoosen contends that consideration of this fact violated his plea agreement.

This Court disagrees.

First, this Court notes that the issue of the breach of the plea agreement was the subject of

an earlier federal habeas proceeding in the Central District of California.[24]  In that proceeding,

Van Hoosen specifically raised the issue that the plea agreement had been breached.  The Central

District Court dismissed Van Hoosen's petition as a second or successive petition.[25]  In an

---

[20] Docket No. 16-1, pp. 70-72.

[21] Docket No. 16-1, pp. 74-77.

[22] Docket No. 16-1, pp. 88-92.  The Plea colloquy does not mention the dismissal of the other charges.  The State does not dispute Van Hoosen's contention they were dismissed as part of the plea agreement and it appears from the colloquy that Van Hoosen's plea went solely to the first count, Torture.  Thus, this Court accepts as true that the other charges were, in fact dismissed, in exchange for Van Hoosen's plea to the Torture charge.

[23] Docket No. 16-2, p. 35.  Van Hoosen also points to other instances where the Board referred to charges that had been dismissed.  Those references, however, are to charges that pre-dated the incident that led to Van Hoosen's conviction.  Thus, they are hardly relevant to the issue before this Court—an alleged breach of the plea agreement.

[24] *Van Hoosen v. Kramer*, Case No. 5:05-cv-00913-AG-Rz.  The Court takes judicial notice of that case.  Fed. R. Evid. 201.

[25] 28 U.S.C. § 2244(b)(3)(A), (4)

unpublished decision, the Court of Appeals for the Ninth Circuit affirmed and declined to grant

Van Hoosen permission to file a successive petition.[26]  If the earlier federal habeas petition was a

second or successive petition, then this Petition must, by the same reasoning, constitute a

successive petition.  In the absence of a grant of permission to file the petition by the Ninth

Circuit, to the extent that the Petition seeks relief on the basis of the alleged breach of the plea

agreement, this Court must dismiss that claim.[27]

Even if this Court were to reach the breach of plea agreement claim on the merits, Van

Hoosen would not prevail.  That a plea agreement is a contract that must be honored by the state

is well settled.[28]  In this case, however, Van Hoosen reads his "contract" too broadly.  The proper

interpretation and effect of the agreement between the State of California and Van Hoosen in this

case is a matter governed by California contract law.[29]  What Van Hoosen received in exchange

for his guilty plea was a life sentence, with a *possibility* of parole at some point after he had

served his minimum term of seven years.  Under California law, there is no guarantee of parole

after a specified period of time, only that a prisoner will be considered for parole and granted

parole *only if*, in the exercise of the discretion of the Board applying factors specified by

regulations, he or she is found to be suitable for parole.[30]  Van Hoosen does not allege that there

---

[26] *Van Hoosen v. Kramer*, 319 Fed. Appx. 590 (9th Cir. 2009).

[27] 28 U.S.C. § 2244(b)(4).

[28] *See Santobello v. New York*, 404 U.S. 257, 262-63 (1971).

[29] *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987).

[30] *Cf. In re Lowe*, 31 Cal. Rptr.3d 1, 13 (Cal. App. 2005) (holding that when a defendant enters a guilty plea, he has no reasonable expectation regarding the identity of the person or persons who would exercise discretion in evaluating his suitability for parole, or that the person or persons would not change over time) (citing *Rosenkrantz*, 59 P.3d at 193).

was any promise, actual or implied, of when, or under what terms or conditions, he might be given parole, or, for that matter, that he would be granted parole at all at any time.  The only reference to parole in the plea colloquy in the record before this Court is:  "In this case, because there is no set minimum, the minimum would be seven years.  Even though I am not going to sentence you seven to life, it will simply be a life term, and that is with the possibility of parole."[31]

Van Hoosen's argument that it was his understanding that the dismissed charges would not be held against him and, if he had known otherwise, he would not have entered a guilty plea does not carry the day.  "A plea agreement violation claim depends upon the actual terms of the agreement, not the subjective understanding of the defendant . . . ."[32]  Nor does Van Hoosen argue that any such agreement, if one did exist, which is doubtful, would be enforceable under California law.  Finally, if it was error on the part of the Board to consider the dismissed charges, in this case the error was harmless.  That is, the Board's consideration of the dismissed attempted rape charge "had [no] substantial and injurious effect or influence in determining the [outcome]."[33]  Van Hoosen is not entitled to relief on his first ground.

## B.    Due Process

In denying his petition for habeas relief, the San Bernardino County Superior Court, in the only reasoned decision by a state court, exhaustively examined the record.

---

[31] Docket No. 16-1, p. 90.

[32] *In re Honesto*, 29 Cal. Rptr.3d 653, 660 (Cal. App. 2005).

[33] *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993); *see Fry v. Pliler,* 551 U.S. 112, 121 (2007) (holding that the *Brecht* standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

The facts of the crime are summarized in the transcript of the subsequent parole consideration hearing heard on November 14, 2007 commencing on page 15 at line 8.  That summary provides in part that the victim who had had a relationship with Petitioner advised him that she no longer wanted to be involved with him and asked him to leave her home.  The Petitioner became physically abusive striking her multiple times about her face and chest.  The victim then ran to call police where upon Petitioner came at night and threatened the victim.  During this time Petitioner continued to beat the victim.  Over the next 12 hours Petitioner continued to threaten and assault the victim.

The officers who eventually responded to the area where the victim was located noted extensive injuries including bleeding, swollen eyes, bruising about her face and other bruises about her body including teeth marks on her right wrist.

The Petitioner was received into the Department of Corrections on May 29, 1998 with a minimum eligible parole date of December 24, 2004.  The Petitioner has filed this petition to obtain habeas relief from the Board of Parole Hearings [*sic*] denial of the setting of a parole date by finding him to be unsuitable and an unreasonable risk of danger to society and a threat to public safety.  The Petitioner contends that he was denied due process of law by the Board of Parole Hearings denying his rights to his "liberty interest."  He also claims that this right was violated because of the Board's determination that he continues to prove an unreasonable risk to society.  He further contends that his due process rights were denied because of the Board's continuing use of facts of the crime to deny parole.  Among other cases, Petitioner references this Court to In re Biggs v. Terhune (2003) 334, 15 Fed 3rd, 910 [*sic*].  In Biggs v. Terhune, *supra*, the Defendant was denied parole because of the gravity of the committed offense and the 9th circuit [*sic*] Court of Appeals and found this acceptable and stated that should Mr. Biggs continue to be otherwise found unsuitable and parole denied simply because of the nature of the crime, that such would violate his "liberty interest on parole" and result in a due process violation.  The Biggs Court was decided on the merits on the case before it and therefore the holding is not necessarily a fair statement of constitutional law which this Court would be required to follow.  See, People v. Camacho (2000) 23 Ca1 4th, 824 [*sic*].  Additionally, the statement by the Court was dictum and not the law of the case.  Recently, the California Supreme Court in the case of In re Lawrence (2008) 44 Cal 4th , 1181 [*sic*] provided the Board of Parole Hearing and courts engaged in habeas proceedings with additional direction in evaluating claims such as Petitioner.  In Lawrence the Supreme Court directed the reviewing authority to evaluate future dangers within the and/or post incarceration history as well as his current demeanor and mental state.

Prior to the Supreme Court's decision in Lawrence the last and most definitive word on the area of law controlling judicial review of Board of Parole Hearings decisions denying a finding of suitability for parole was made by our court in the cases of In re Rosenkrantz (2002) 29 Cal 4th , 616 [*sic*] and In re John E. Dannenberg (2005) 34 Cal 4th, 1061 [*sic*].  Penal Code § 3041 (b) provides for parole review of inmates such as Petitioner and further provides that such inmates

shall be given a release date <u>unless</u> the Board determines that the gravity of the current convicted offense is such that consideration of public safety requires a more lengthy period of incarceration.  California Code of Regulations, title 15, section 2402(a)(b)(c)(d) sets forth the rules by which the Board is to make its determination.  As stated by the Supreme Court, parole applicants have an expectation of being granted parole unless the Board finds <u>in the exercise of its discretion</u> that the applicant is unsuitable.  The Supreme Court in its <u>Lawrence</u> decision did not take away the Board's exercise of discretion. It merely requires the Board to take in to account and explain the use of pre and post incarceration factors in determining the dangerousness of an individual similarly situated as Petitioner.

The operative words are "in the exercise of its discretion".  [*Sic*]  Judicial review of this discretion is limited only to a determination of whether there is "some evidence" in the record to support the decision.  As held by the Supreme Court, this standard of "some evidence" is extremely deferential.  The reviewing court prohibited from an independent assessment of the merits or considering whether substantial evidence supports the findings of the Board and its underlying decision.  The Board is required to consider the Petitioner's background, his institutional participation, post parole plans, as well as the psychological evaluations.  The Supreme Court held, however, that the nature of the inmate's offense <u>alone</u> could constitute a sufficient basis for denying parole. This does not permit the paroling authority to automatically exclude parole for individuals who have been convicted of a particular type of offense.  It is in this area that the Supreme Court's guidance in <u>Lawrence</u> directs the paroling authority and a reviewing court to consider factors that are brought out at the parole hearing.

At bench, a review of the record supports a finding that there was "some evidence" which led the Board to its finding of unsuitability of Petitioner for parole, for as the Supreme Court describes such evidence, that need only be a "modicum" of evidence.

Commencing on page 25, line 14 Commissioner Gamer noted Petitioner's previous arrests for driving under the influence in 1978 and 1979, a hit and run in 1981, an assault with a deadly weapon in 1984 and a conviction of exhibiting a firearm as well in 1984.  Petitioner received sentences of probation and county jail.  In 1986 and 1987 Petitioner was arrested and ultimately the matter was resolved by way of a vandalism charge and was placed on probation and again sentenced to a term of 120 days for cultivating marijuana.  Later in 1993, Petitioner was again granted probation with a term of 270 days in the county jail and while on probation arrested again for receiving stolen property and sentenced to state prison.  On page 55, Commissioner Bachlor noted a CDC 115 on January 15, 2004 as well as 3 CDC 128's the last occurring in May of 2003.

Commencing on page 56 the most recent psychological report by Dr. Campo noted polysubstance dependence in remission due to Petitioner's institutional confinement, borderline personality disorder and certain physical ailments.

11

The Commissioners did note that the Petitioner's psychological evaluation was more complimentary than the initial evaluation prepared at his first hearing. In addition, the Board members noted his substance abuse classes Petitioner had attended as well as his classes dealing with anger management. Petitioner as well had looked into and completed educational and job skills classes while institutionalized. On page 81 in its decision the Board noted that the instant offense was especially cruel and callous in that the victim had been Petitioner's girlfriend for approximately 3 years and that she was severely beaten over a period of 12 hours. They then went on to note that based upon his past record which included probation, jail and prison that any attempts to assist Petitioner had failed and most specifically they had failed to profit from society's previous attempts to correct his criminality and that his crimes were escalating. Commissioner Gamer at page 4 of the decision noted the CDC 115's and 128's considering that that misconduct while incarcerated was something the Board highly considered.

As indicated earlier the Board did consider the positive factors which favored parole and made its findings that these did not outweigh the factors surrounding the circumstances of the crime taking into account Petitioner's pre and post conviction factors. While the decision does not reflect the weighing process of the Board, the <u>Rosenkrantz</u> Court at page 677 clearly states that the Board need not explain its decision in the precise manner in which the specific facts were relevant to parole suitability. This consideration in balancing lay within the discretion of the Board.

In light of the dictates of <u>In re Lawrence</u> this Court finds that the Board's observations ware valid and consisted of "some evidence" in support of a finding of non suitability with a 2 year denial. The petition for Writ of Habeas Corpus is denied.[34]

In order to preserve the issues for appeal, Respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial.[35]   That is, Respondent contends that there is no due process right to have the result supported by sufficient evidence. Because they are contrary to binding Ninth Circuit law,[36] Respondent's arguments are

---

[34] Docket No. 16-3, pp. 2-6 (emphasis in the original).

[35] *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 15 (1979).

[36] *See Pirtle v. California Bd. of Prison Terms*, 611 F.3d 1015, 1020 (9th Cir. 2010); *Cooke*, 606 F.3d at 1213-14 (citing *Hayward*, 603 F.3d at 561-64); *Pearson*, 606 F.3d at 610-11

without merit.  In its response, the State identifies the factors, other than the underlying

commitment offense, that the Board relied upon in denying Van Hoosen's parole. The State's

disagreement with the applicability of *Hayward* notwithstanding, the State does point to the

evidence in the record that supports each of these factors.

This Court must decide the case on the law as it exists at the time it renders is decision

and, if the law changes while the case is pending, this Court applies the new rule.[37]  Thus,

although it establishes a new rule, the holding in *Hayward* is controlling.  In this case, this Court

"need only decide whether the California judicial decision approving the [Board's] decision

rejecting parole was an 'unreasonable application' of the California 'some evidence'

requirement, or 'was based on an unreasonable determination of the facts in light of the

evidence.'"[38]  By its reference to § 2254(d), the Ninth Circuit implicitly, if not explicitly, directed

this Court to apply § 2254(d) to the decisions of the California Supreme Court using the same

standards as are applied to the determination of the law as established by the United States

Supreme Court.

As noted above in Part III, under the AEDPA, this Court cannot grant relief unless the

decision of the state court was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States" at the time the

state court renders its decision or "was based on an unreasonable determination of the facts in

---

(same).

[37] *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

[38] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

light of the evidence presented in the state court proceeding."[39]  The Supreme Court has

explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as

opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[40]

When a claim falls under the "unreasonable application" prong, a state court's application of

Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[41]

The Supreme Court has made clear that the objectively unreasonable standard is a substantially

higher threshold than simply believing that the state court determination was incorrect.[42]

Consequently, it appears that, under the mandate of *Hayward*, this Court must canvas and apply

California law as it existed at the time of the state court decision to the facts in the record as

presented to the state court.

The mandate in *Hayward* is that this Court must review the decisions of state courts

interpreting and applying state law—in effect serving as a super-appellate court over state court

decisions.  This is in tension with the holdings of the Supreme Court.  It is a fundamental precept

of dual federalism that the states possess primary authority for defining and enforcing the

criminal law.[43]  A fundamental principle of our federal system is "that a state court's

---

[39] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Andrade,* 538 U.S. at 70-75 (explaining this standard).

[40] *Williams*, 529 U.S. at 412.

[41] *Wiggins*, 539 U.S. at 520-21 (2003) (internal quotation marks and citations omitted).

[42] *Schriro*, 550 U.S. at 473.

[43] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455

interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting in habeas corpus."[44]  This principle applied to federal

habeas review of state convictions long before AEDPA.[45]  A federal court errs if it interprets a

state legal doctrine in a manner that directly conflicts with the state supreme court's

interpretation of the law.[46]

> In *Rosenkrantz*, the California Supreme Court held:

> [. . . .]  "Due process of law requires that [the Board's] decision be
> supported by some evidence in the record.  Only a modicum of evidence is
> required.  Resolution of any conflicts in the evidence and the weight to be given
> the evidence are matters within the authority of the [Board].  [. . . .]  [T]he precise
> manner in which the specified factors relevant to parole suitability are considered
> and balanced lies within the discretion of the [Board] . . . .  It is irrelevant that a
> court might determine that evidence in the record tending to establish suitability
> for parole far outweighs evidence demonstrating unsuitability for parole.  As long
> as the [Board's] decision reflects due consideration of the specified factors as
> applied to the individual prisoner in accordance with applicable legal standards,
> the court's review is limited to ascertaining whether there is some evidence in the
> record that supports the [Board's] decision."[47]

The California Supreme Court then held:

> The nature of the prisoner's offense, alone, can constitute a sufficient basis
> for denying parole.  (Citations omitted.)  Although the parole authority is
> prohibited from adopting a blanket rule that automatically excludes parole for

---

(2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[44] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[45] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[46] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[47] *Rosenkrantz*, 59 P.3d at 218.  Quoted with approval in *Shaputis*, 190 P.3d at 585.

individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant. [. . . .]

In some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation—for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense. Denial of parole under these circumstances would be inconsistent with the statutory requirement that a parole date normally shall be set "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public . . . ." (Pen.Code, § 3041, subd. (a).) "The Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of murder. (Pen. Code, § 190 et seq.) [¶] Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date." ( Citation omitted.)[48]

In *Dannenberg* the California Supreme explained:

[. . . .] So long as the Board's finding of unsuitability flows from pertinent criteria, and is supported by "some evidence" in the record before the Board [citing *Rosenkrantz*], the overriding statutory concern for public safety in the individual case trumps any expectancy the indeterminate life inmate may have in a term of comparative equality with those served by other similar offenders. Section 3041 does not require the Board to schedule such an inmate's release when it reasonably believes the gravity of the commitment offense indicates a continuing danger to the public, simply to ensure that the length of the inmate's confinement will not exceed that of others who committed similar crimes.[49]

The California Supreme Court then held:

---

[48] *Id.* at 222; *see Shaputis*, 190 P.3d at 584-85 ("The record supports the Governor's determination that the crime was especially aggravated *and*, importantly, that the aggravated nature of the offense indicates that the petitioner poses a current risk to public safety." (emphasis in the original)).

[49] *Dannenberg*, 104 P.3d at 795.

Thus, there clearly was "some evidence" (citing *Rosenkrantz*) to support the Board's determination that Dannenberg's crime was "especially callous and cruel," showed "an exceptionally callous disregard for human suffering," and was disproportionate to the "trivial" provocation. Accordingly, under *Rosenkrantz,* the Board could use the murder committed by Dannenberg as a basis to find him unsuitable, for reasons of public safety, to receive a firm parole release date.[50]

The Board must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.[51] The Board "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[52] In *Lawrence*, however, the California Supreme Court rejected the argument "that the aggravated circumstances of a commitment offense inherently establish current dangerousness," holding:

> "[W]e conclude that although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety."[53]

This is the clarification upon which *Hayward*, *Pearson*, and *Cooke* rely, and it was the language in *Lawrence* to which this Court alluded in its Order.

---

[50] *Id.* at 803.

[51] *Id.* at 786-87, 802-803; *see Rosenkrantz*, 59 P.3d at 222.

[52] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

[53] 190 P.3d at 554-55; *see Cooke*, 606 F.3d at 1214.

This Court must, therefore, determine whether the decision of the San Bernardino County Superior Court upholding the Board's denial of parole complied with California law, as expressed in *Lawrence* and *Shaputis*.  Because state court judgments carry a presumption of finality and legality, Van Hoosen has the burden of showing by a preponderance of the evidence that he merits habeas relief.[54]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[55]  This presumption applies to state trial courts and appellate courts alike.[56]  As noted above, both the subsidiary findings on the applicable factors and the ultimate finding of some evidence constitute factual findings.[57]

In this case, the San Bernardino County Superior Court found, on the evidence presented to the Board, that the Board's decision satisfied the California "some evidence" rule enunciated in *Lawrence*.  In his subsequent petition for habeas relief to the California Court of Appeal, and his petition for review before the California Supreme Court, Van Hoosen presented the same evidence and arguments that he had presented to the San Bernardino County Superior Court.[58]

---

[54] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[55] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[56] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[57] *Cooke*, 606 F.3d at 1216.

[58] Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court. This is considered the functional equivalent of the appeal process.  *See Carey v. Saffold*, 536 U.S. 214, 221-222 (2002).

Van Hoosen also submitted the decision of the San Bernardino County Superior Court to both appellate courts. Both appellate courts denied Van Hoosen relief without opinion or citation to authority. By their summary denials, the appellate courts are presumed to have adopted the reasoning of the San Bernardino County Superior Court.[59] This Court must presume that the state courts correctly applied state law.[60] Thus, the presumed adoption of the reasoning of the San Bernardino County Superior Court conclusively establishes that the California Supreme Court was of the opinion that the Board's decision did not violate the California "some evidence" rule. Further argument on that issue is, therefore, foreclosed.[61]

Even if this Court were to independently review the decision of the San Bernardino County Superior Court, the result would not change. The question "is not whether a federal court believes the state court's determination" under the California "some evidence" standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."[62] Because the California "some evidence" standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.[63] This Court also notes that, under California law, judicial review of a decision denying parole is

---

[59] *Ylst*, 501 U.S. at 802-03.

[60] *See Estelle*, 502 U.S. at 67-68; *Walton,* 497 U.S. at 653, *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *Engle*, 456 U.S. at 119; *Bell,* 543 U.S. at 455.

[61] *See Bradshaw*, 546 U.S. at 74, 76-78.

[62] *Schriro*, 550 U.S. at 473.

[63] See *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

"extremely deferential."[64]  It is through this doubly deferential lens that this Court must review

the decision of the San Bernardino County Superior Court.

Based upon the record before it, applying *Rosenkrantz, Dannenberg, Lawrence* and

*Shaputis*, this Court cannot say that the decision of the San Bernardino County Superior Court

affirming denial of parole was contrary to, or involved an unreasonable application of California

law, or was based on an unreasonable determination of the facts in light of the evidence.  Van

Hoosen is not entitled to relief on his second ground.

### V.  CONCLUSION AND ORDER

Van Hoosen is not entitled to relief on either ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[65]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[66]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  November 4, 2010.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[64] *Rosenkrantz*, 59 P.3d at 210.

[65] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[66] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.